**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MOLON MOTOR AND COIL CORPORATION,** | |
| **Plaintiff,** | C.A. No. 1:16-CV-03545 |
| **v.** | Honorable Edmond E. Chang |
| **NIDEC MOTOR CORPORATION,** | JURY TRIAL DEMANDED |
| **Defendant.** | |

## <u>THIRD AMENDED COMPLAINT</u>

Plaintiff Molon Motor and Coil Corporation ("Molon"), by and through its undersigned

counsel, files this Third Amended Complaint for Patent Infringement against Defendant Nidec

Motor Corporation ("Nidec Motor" or "Defendant"), and hereby alleges as follows:

### <u>NATURE OF THE ACTION</u>

1.      This is an action for patent infringement of United States Patent No. 6,465,915

and United States Design Patent No. D451,072 under the Patent Laws of the United States, 35

U.S.C. § 1, et seq., seeking damages and injunctive and other relief under 35 U.S.C. § 281, et

seq.

### <u>THE PARTIES</u>

2.      Plaintiff Molon is a corporation formed under the laws of the State of Illinois

with its principal place of business at 300 North Ridge Avenue, Arlington Heights, Illinois

60005.

3.      Upon information and belief, Defendant Nidec Motor is a corporation formed

under the laws of the State of Delaware with a principal place of business at 8050 W Florissant

Avenue, St. Louis, Missouri 63136. Nidec Motor is a subsidiary of Nidec Corporation,

1

headquartered in Kyoto, Japan.  Nidec Motor may be served with process via its registered

agent, Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, Illinois

62703.

4.     Upon information and belief, on April 1, 2016, Merkle-Korff Industries, Inc.

("Merkle-Korff") and Nidec Kinetek Corporation ("Nidec Kinetek") were merged into Nidec

Motor.  Prior to April 1, 2016, Merkle-Korff was a corporation formed under the laws of the

State of Delaware with a principal place of business at 1776 Winthrop Drive, Des Plaines,

Illinois 60018, and Nidec Kinetek was a corporation formed under the laws of the State of

Delaware with a principal place of business at 1751 Lake Cook Road, Deerfield, Illinois 60015.

5.     Upon information and belief, Merkle-Korff, and Nidec Kinetek have resided in

the Northern District of Illinois ("District").

6.     Upon information and belief, Nidec Motor, at least through the actions of Merkle-

Korff and Nidec Kinetek, has conducted and regularly conducts business within this District, has

purposefully availed itself of the privileges of conducting business in this District, and has

sought protection and benefit from the laws of the State of Illinois.

## JURISDICTION AND VENUE

7.     This action arises under at least the Patent Laws of the United States, 35 U.S.C. §

1, *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285; the Defend Trade Secrets Act of

2016, Pub. L. No. 114-153, 130 Stat. 376; and the Illinois Trade Secrets Act.  This Court has

subject matter jurisdiction over this case for patent infringement and misappropriation of trade

secrets under Defend Trade Secrets Act of 2016 pursuant to 28 U.S.C. §§ 1331 and 1338(a).

This Court has supplemental or pendant jurisdiction over the remaining claims pursuant to 28

U.S.C. § 1367 because such claims are so closely related to Molon's claim for misappropriation

of trade secrets under Defend Trade Secrets Act of 2016 that they form part of the same case or controversy.

8.     This Court has personal jurisdiction over Nidec Motor.  Nidec Motor has either resided in this District and/or has continuous and systematic business contacts with the State of Illinois.  Nidec Motor, directly or through subsidiaries or intermediaries (including Merkle-Korff, Nidec Kinetek, distributors, retailers, and others), conduct its business extensively throughout Illinois, by making, shipping, distributing, offering for sale, selling, and advertising its products and/or services in the State of Illinois and this District.  Nidec Motor, directly and through subsidiaries or intermediaries, purposefully and voluntarily placed one or more infringing products and/or services into the stream of commerce within the Northern District of Illinois.  Nidec Motor has committed acts of patent infringement within the State of Illinois and this District.  Molon's cause of action for patent infringement and misappropriation of trade secrets arises directly from Nidec Motor's activities in this District.

9.     Venue is proper in this Court according to the venue provisions set forth by 28 U.S.C. §§ 1391(b)-(d) and 1400(b).  Nidec Motor is subject to personal jurisdiction in this District, either because it resides in this District or under the Illinois Long-Arm Statute, 735 ILCS 5/2-209, and is therefore deemed to reside in this District for purposes of venue. Moreover, upon information and belief, Nidec Motor committed acts within this judicial District giving rise to this action and does business in this District, including but not limited to making, shipping, distributing, offering for sale, selling, and advertising its products and/or services in this District.

## BACKGROUND

**A.     The Patents-In-Suit.**

10.     United States Patent No. 6,465,915 ("the '915 Patent"), entitled "Miniature Motor," was duly and legally issued by the U.S. Patent and Trademark Office on October 15, 2002, after full and fair examination.  Mohamed Kerdjoudj and A.N. Tsergas are the named inventors listed on the '915 Patent.  The inventors assigned all rights in the '915 Patent to Molon.  Molon has all right, title and interest to the '915 Patent as well as the right to sue for, collect, and receive damages for past, present and future infringements of the '915 Patent.  The '915 Patent is valid and in force.  A true and correct copy of the '915 Patent is attached as **Exhibit A** and made a part hereof.

11.     United States Design Patent No. D451,072 ("the '072 Patent"), entitled "Compact Gear Motor Box," was duly and legally issued by the U.S. Patent and Trademark Office on November 27, 2001, after full and fair examination.  Mohamed Kerdjoudj and A.N. Tsergas are the named inventors listed on the '072 Patent.  The inventors assigned all rights in the '072 Patent to Molon.  Molon has all right, title and interest to the '072 Patent as well as the right to sue for, collect, and receive damages for past, present and future infringements of the '072 Patent.  The '072 Patent is valid and in force.  A true and correct copy of the '072 Patent is attached as **Exhibit B** and made a part hereof.

**B.     Defendant's Infringing Conduct.**

12.     Upon information and belief, Nidec Motor makes, uses, offers to sell, and/or sells within, and/or import into the United States products that incorporate the fundamental technologies covered by at least claims 1, 2, 3 and 9 of the '915 Patent, and incorporated the fundamental design of the '072 Patent.  Upon information and belief, the infringing products include, but are not limited to, custom low-voltage direct current low-profile right angle gear

4

box motors ("Custom LVDC Low-Profile Right Angle Gear Box Motors"). By way of example only, Molon identifies the S3210 (bearing a "VMR5" designation) gear box motors as products that infringe at least the identified claims of the '915 Patent, and the '072 Patent. Similar models of gear box motors are believed to infringe as well. Upon information and belief, Nidec Motor designs and manufactures the Custom LVDC Low-Profile Right Angle Gear Box Motors according to customer specifications, and do not make the Custom LVDC Low-Profile Right Angle Gear Box Motors available to the public.

13. Nidec Motor's Custom LVDC Low-Profile Right Angle Gear Box Motors are miniaturized motors.

14. Nidec Motor's Custom LVDC Low-Profile Right Angle Gear Box Motors have a DC motor with a permanent magnet attached thereto.

15. Nidec Motor's Custom LVDC Low-Profile Right Angle Gear Box Motors have a first-stage worm driven at one end by the DC motor.

16. Nidec Motor's Custom LVDC Low-Profile Right Angle Gear Box Motors have a pinion gear engaging with the first-stage worm.

17. Nidec Motor's Custom LVDC Low-Profile Right Angle Gear Box Motors have a worm gear formed integrally with the pinion gear.

18. Nidec Motor's Custom LVDC Low-Profile Right Angle Gear Box Motors have at least one cluster gear engaging with the worm gear.

19. Nidec Motor's Custom LVDC Low-Profile Right Angle Gear Box Motors have an output gear driven by the at least one cluster gear.

20. Nidec Motor's Custom LVDC Low-Profile Right Angle Gear Box Motors have an output shaft connected with the output gear.

21.     Nidec Motor's Custom LVDC Low-Profile Right Angle Gear Box Motors have a cover configured to protect a gear train.

22.     Nidec Motor's Custom LVDC Low-Profile Right Angle Gear Box Motors have a gear box configured to contain the gear train.

23.     Nidec Motor's Custom LVDC Low-Profile Right Angle Gear Box Motors have a boss connected at one end to the cover and configured to stabilize the pinion gear.

24.     Nidec Motor's Custom LVDC Low-Profile Right Angle Gear Box Motors have a cradle bearing formed in the cover and configured to receive one shaft end of the first-stage worm in order to prevent the first-stage worm from bending during operation.

25.     In Nidec Motor's Custom LVDC Low-Profile Right Angle Gear Box Motors, the first-stage worm, the pinion gear, the worm gear, the at least one cluster gear and the output gear form the gear train.

26.     Nidec Motor's Custom LVDC Low-Profile Right Angle Gear Box Motors have a support plate connected between the DC motor and the first-stage worm.

27.     Nidec Motor's Custom LVDC Low-Profile Right Angle Gear Box Motors have a device configured to fasten the support plate to the DC motor so that the DC motor and the first-stage worm remain connected together in a straight line during rotation of the first-stage worm.

28.     Nidec Motor's Custom LVDC Low-Profile Right Angle Gear Box Motors have a pinion shaft mounted below the pinion gear and above the worm gear.

29.     Nidec Motor's Custom LVDC Low-Profile Right Angle Gear Box Motors are a design for a compact gear box motor.

**C.     Defendant's Knowledge of the '915 Patent**

30.     On August 4, 2004, Molon filed a complaint for patent infringement against Merkle-Korff in the Northern District of Illinois (Civil Action No. 1:04-cv-5134) alleging

6

infringement of United States Patent No. 6,054,785. The parties resolved this litigation pursuant to written agreement and a stipulated dismissal was entered on February 16, 2007. As part of the resolution, Merkle-Korff and its parent, Kinetek, Inc., sought a broad license to the '915 patent, which Molon declined to convey. Consequently, Nidec Motor has had knowledge of the '915 patent since at least February 2007.

## COUNT I

## Patent Infringement of U.S. Patent No. 6,465,915

31. Plaintiff repeats and re-alleges each and every allegation of paragraphs 1-32 as though fully set forth herein.

32. The '915 Patent is valid and enforceable.

33. Upon information and belief, Nidec Motor has been and is currently directly infringing under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, at least claims 1, 2, 3 and 9 of the '915 Patent by making, using, offering to sell, and/or selling to third-party manufacturers, distributors, and/or consumers (directly or through intermediaries and/or subsidiaries) in this District and elsewhere within the United States and/or importing into the United States, without authority, Custom LVDC Low-Profile Right Angle Gear Box Motors, including not limited to the S3210, that include all of the limitations of at least claims 1, 2, 3 and 9 of the '915 Patent.

34. Upon information and belief, third-party manufacturers that purchase Nidec Motor's Custom LVDC Low-Profile Right Angle Gear Box Motors that include all of the limitations of one or more claims of the '915 Patent, including but not limited to the S3210, also directly infringe, either literally or under the doctrine of equivalents, under 35 U.S.C. § 271(a), the claims of the '915 Patent by using, offering to sell, and/or selling infringing products in this

District and elsewhere in the United States and/or importing infringing products into the United States.

35.　　Upon information and belief, Nidec Motor has had knowledge of the '915 Patent at least as of February 2007.

36.　　Upon information and belief, Nidec Motor has been and is currently indirectly infringing, by way of inducement with specific intent under 35 U.S.C. § 271(b), at least claims 1, 2, 3 and 9 of the '915 Patent. Nidec Motor's customers, including but not limited to SandenVendo, Royal Vendors, and Aquion, directly infringe at least claims 1, 2, 3 and 9 of the '915 Patent by using, offering to sell, and/or selling products, including but not limited to vending machines and water filtration systems, containing the infringing Custom LVDC Low-Profile Right Angle Gear Box Motors in this District and elsewhere in the United States and/or importing products containing the infringing Custom LVDC Low-Profile Right Angle Gear Box Motors into the United States. Upon information and belief, as of at least February 2007, Nidec Motor has known and continues to know that Nidec Motor's customers are directly infringing at least one claim of the '915 Patent. Upon information and belief, Nidec Motor has demonstrated specific intent to encourage its customers to infringe the claims of the '915 Patent by (i) providing designs, pursuant to both Nidec Motor's and customers' specifications, for the Custom LVDC Low-Profile Right Angle Gear Box Motors; (ii) manufacturing and shipping prototypes of the Custom LVDC Low-Profile Right Angle Gear Box Motors; (iii) performing testing and qualification of the Custom LVDC Low-Profile Right Angle Gear Box Motors; (iv) marketing and generating offers to sell the Custom LVDC Low-Profile Right Angle Gear Box Motors; and (v) providing customer support for the Custom LVDC Low-Profile Right Angle Gear Box Motors. All of these active steps, performed in the United States and within this District, are

8

taken to encourage direct infringement and show an affirmative intent that the Custom LVDC Low-Profile Right Angle Gear Box Motors be used to infringe the '915 Patent.

37. By inducing its customers to use the inventions claimed in the '915 Patent, including through their use of the Custom LVDC Low-Profile Right Angle Gear Box Motors, Nidec Motor has been and is now indirectly infringing under 35 U.S.C. § 271(b) one or more claims of the '915 Patent, either literally or under the doctrine of equivalents, including at least claim 1, 2, 3 and 9.

38. Upon information and belief, Nidec Motor has been and is currently indirectly infringing, by way of contributing to the infringement of others under 35 U.S.C. § 271(c), at least claims 1, 2, 3 and 9 of the '915 Patent. Nidec Motor's customers, including but not limited to SandenVendo, Royal Vendors, and Aquion, directly infringe at least claims 1, 2, 3 and 9 of the '915 Patent by using, offering to sell, and/or selling products, including but not limited to vending machines and water filtration systems, containing the infringing Custom LVDC Low-Profile Right Angle Gear Box Motors in this District and elsewhere in the United States and/or importing products containing the infringing Custom LVDC Low-Profile Right Angle Gear Box Motors into the United States. Upon information and belief, as of at least February 2007, Nidec Motor has known of the '915 Patent. Upon information and belief, Nidec Motor has made, used, sold, offered for sale certain components of the Custom LVDC Low-Profile Right Angle Gear Box Motors in the United States, and/or imported certain components, including but not limited to gear box casings, gears and electric motors, into the United States, those components not being staple articles of commerce and not having any substantial use outside of infringement of at least one claim of the '915 Patent.

39. By contributing to its customers' use of the inventions claimed in the '915 Patent, including through their use of the Custom LVDC Low-Profile Right Angle Gear Box Motors,

9

Nidec Motor has been and is now indirectly infringing under 35 U.S.C. § 271(c) one or more claims of the '915 Patent, either literally or under the doctrine of equivalents, including at least claim 1, 2, 3 and 9.

40.     Upon information and belief, Nidec Motor has been and is currently infringing, by way of inducement with specific intent under 35 U.S.C. § 271(f)(1), at least claims 1, 2, 3 and 9 of the '915 Patent by supplying components, including but not limited to gear box casings, gears and electric motors, of the Custom LVDC Low-Profile Right Angle Gear Box Motors in and from the United States, knowing that such components are so made or adapted and intending that such components will be combined outside of the United States to form the Custom LVDC Low-Profile Right Angle Gear Box Motors that would infringe the '915 Patent if such combination occurred within the United States.  Upon information and belief, Nidec Motor has known and continues to know that components for the Custom LVDC Low-Profile Right Angle Gear Box Motors are supplied in and from the United States to at least its affiliates in Mexico where those components are combined in whole or in part to form the Custom LVDC Low-Profile Right Angle Gear Box Motors that would infringe the '915 Patent if such combination occurred within the United States.

41.     By inducing the combination of components at its affiliates' manufacturing and assembly facilities outside of the United States to form the Custom LVDC Low-Profile Right Angle Gear Box Motors, Nidec Motor has been and is now infringing under 35 U.S.C. § 271(f)(1) one or more claims of the '915 Patent, either literally or under the doctrine of equivalents, including at least claim 1, 2, 3 and 9.

42.     Upon information and belief, Nidec Motor has been and is currently infringing, by way of contribution under 35 U.S.C. § 271(f)(2), at least claims 1, 2, 3 and 9 of the '915 Patent by supplying components, including but not limited to gear box casings, gears and

10

electric motors, of the Custom LVDC Low-Profile Right Angle Gear Box Motors in and from the United States, knowing that such components are especially made or especially adapted for use in the invention of the '915 Patent and not a staple article or commodity of commerce suitable for substantial noninfringing use, knowing that such components are so made or adapted and intending that such components will be combined outside of the United States to form the Custom LVDC Low-Profile Right Angle Gear Box Motors that would infringe the '915 Patent if such combination occurred within the United States. Upon information and belief, Nidec Motor has known and continues to know that components for the Custom LVDC Low-Profile Right Angle Gear Box Motors are supplied in and from the United States to at least its affiliates in Mexico where those components are combined in whole or in part to form the Custom LVDC Low-Profile Right Angle Gear Box Motors that would infringe the '915 Patent if such combination occurred within the United States.

43. By contributing to the combination of components at its affiliates' manufacturing and assembly facilities outside of the United States to form the Custom LVDC Low-Profile Right Angle Gear Box Motors, Nidec Motor has been and is now infringing under 35 U.S.C. § 271(f)(2) one or more claims of the '915 Patent, either literally or under the doctrine of equivalents, including at least claim 1, 2, 3 and 9.

44. As a result of Nidec Motor's unlawful infringement of the '915 Patent, Molon has suffered and will continue to suffer damages in an amount to be proven at trial. Molon is entitled to recover from Nidec Motor the damages adequate to compensate for such infringement in the form of both lost profits and a reasonable royalty, which have yet to be determined.

45. Molon is entitled to pre-suit damages for Nidec Motor's infringement of the '915 Patent under 35 U.S.C. § 287(a).

11

46.     Nidec Motor will continue to infringe the '915 Patent unless and until it is enjoined by this Court.

47.     Despite Nidec Motor's knowledge of the '915 Patent and the gear box motor technology that it covered since at least as early as February 2007, and despite Nidec Motor's knowledge that it lacked the requisite license to the '915 Patent, Nidec Motor has nevertheless continued to directly infringe the '915 Patent under 35 U.S.C. §§ 271(a), 271(f)(1) and 271(f)(2), induce the infringement of the '915 Patent under 35 U.S.C. § 271(b), and contribute to the infringement of the '915 Patent under 35 U.S.C. § 271(c), through the making, using, selling, offering for sale, importing and providing components of its Custom LVDC Low-Profile Right Angle Gear Box Motors, despite knowing that its actions and products directly and/or indirectly infringed the '915 Patent.  At a minimum, an objectively high likelihood existed that Nidec Motor's actions constituted infringement of the '915 Patent.  This infringement was known to Nidec Motor or was so obvious that Nidec Motor should have known about this infringement. Despite knowing that its actions constituted infringement of the '915 Patent and/or despite knowing that that there was a high likelihood that its actions constituted infringement of the '915 Patent, Nidec Motor nevertheless continued its infringing actions, and continued to make, use, sell, offer for sale, import and provide components for its Custom LVDC Low-Profile Right Angle Gear Box Motors.

48.     Nidec Motor's infringement of the '915 Patent has thus been deliberate and willful.

12

## COUNT II

### Patent Infringement of U.S. Design Patent No. D451,072

49.     Plaintiff repeats and re-alleges each and every allegation of paragraphs 1-32 as though fully set forth herein.

50.     The '072 Patent is valid and enforceable.

51.     Upon information and belief, Nidec Motor has been and is currently directly infringing the '072 Patent under 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling to third-party manufacturers, distributors, and/or consumers (directly or through intermediaries and/or subsidiaries) in this District and elsewhere within the United States and/or importing into the United States, without authority, Custom LVDC Low-Profile Right Angle Gear Box Motors, including not limited to the S3210.

52.     As a result of Nidec Motor's unlawful infringement of the '072 Patent, Molon has suffered and will continue to suffer damages in an amount to be proven at trial.  Molon is entitled to recover from Nidec Motor the damages adequate to compensate for such infringement in the form of lost profits, a reasonable royalty and/or Nidec Motor's total profits pursuant to 35 U.S.C. § 289, all of which have yet to be determined.

53.     Molon is entitled to pre-suit damages for Nidec Motor's infringement of the '072 Patent under 35 U.S.C. § 287(a).

54.     Nidec Motor will continue to infringe the '072 Patent unless and until it is enjoined by this Court.

## COUNT III

## Nidec Motor's Violation Of The Defend Trade Secrets Act Of 2016

55.     Molon is a leading manufacturer of fractional and sub-fractional electric motors and gearmotors, providing solutions to its customers based on their individual business requirements.  Molon provides its customers with access to Product Specialists, Senior Engineers, and other specialists, which sets Molon apart from other motor solution providers. The electric motor industry is highly competitive and Molon's success depends on numerous factors, including its ability to attract and retain reliable and qualified engineers, sales representatives and technical support personnel, to provide custom motor solutions, as well as obtain and maintain Molon's customer relationships.  Molon invests significant financial and other resources in its motor development, maintaining its quality and expanding its customer relationships.  Molon diligently protects its investment through employment agreements and by protecting its trade secrets and confidential business information.

56.     Account executives and engineers at Molon have access to Molon's computer systems that are used to track and store trade secret and confidential information and materials, including engineering documents, quality assurance documents, customer lists, customer information, customer proposals, communications with its customers, and other data in which it has a proprietary interest, all of which have been developed by Molon over an extensive period of time, at great expense.  Molon's confidential information is vital to its operations and business interests.  Molon has a number of policies, procedures, and agreements that it uses to protect its trade secret and confidential information, and safeguard its customer relationships. Molon owns all of the computers it uses.  Molon does not employ portable data drives to access or to move data in its computer systems.

14

57.     To protect its business interests and the confidentiality of business operations, Molon has taken affirmative measures, including the utilization of restrictive covenants in its employment contracts, computer username and passwords protection and firewalls, limiting access to information safeguards and other measures, and restricting unauthorized use of data. The restrictive covenants in Molon's employment contracts are negotiated with each employee as part of their employment and include any combination of clauses concerning confidential information and trade secrets.  Each restrictive covenant is limited in scope to protect both Molon's legitimate business interests while preventing undue hardship on the employee in his or her pursuit of employment in his or her area of expertise.

58.     Nidec Motor, through its subsidiaries and divisions, knew or should have known that the employees they hired from Molon would be covered by employment contracts with restrictive covenants.  Despite this knowledge, Nidec Motor conspired with a former Molon employee after he voluntarily terminated his position at Molon to engage in unfair and unlawful competition with Molon, namely, Manish Desai who was Molon's Head of Quality Control and left Molon to go to Merkle-Korff in June 2013.

59.     Upon information and belief, Nidec Motor has used and disclosed Molon's trade secrets and confidential information in violation of both Federal law and the law of the State of Illinois.

60.     As a condition of employment, Mr. Desai signed an employment agreement with Molon.  This agreement contained several restrictive covenants, including trade secrets and confidential information clauses.

61.     As Head of Quality Control at Molon, Mr. Desai's duties to Molon included: (i) providing quality control engineering, including through product reliability testing; (ii) engaging Molon service personnel to achieve sales and service objectives by providing accurate

15

engineering data, as needed; (iii) ensuring that all required client paperwork was complete, accurate, and submitted on time; (iv) providing timely and accurate reports on quality assurance test results as required by Molon management; and (v) demonstrating flexibility and adaptability when assigned additional responsibilities or projects.

62.     In the restrictive covenants in his employment agreement, including those concerning trade secrets and confidential information, Mr. Desai agreed that Molon's trade secrets and confidential information (as clearly defined in the agreements) were Molon's sole and exclusive property.  Mr. Desai agreed that he would follow this and other restrictive covenants regarding Molon's trade secrets and confidential business information during his employment with Molon and for as long as the confidentiality of trade secrets and proprietary business information were to be maintained under applicable law.

63.     The agreement of Mr. Desai to abide by the restrictive covenants were supported by adequate consideration, which consisted of his accepting and continuing his employment. The restrictive covenants in his employment agreement were fair, reasonable, and necessary for the protection of Molon's legitimate business interests.

64.     During his employment with Molon, Mr. Desai had access to all of Molon's trade secrets and confidential business information via his work computer.  The computer was user and password protected, as well as protected by other measures, including a firewall.

65.     On multiple occasions prior to the time Mr. Desai left Molon's employment to begin employment at Merkle-Korf, his computer was accessed under his username and password and a significant amount of files related to the engineering and design, quality control protocols and data, and customer specific data for Molon motors was copied to a Kingston portable data drive.  The wrongfully-copied files consisted of trade secrets and confidential information.  Filed under seal herewith is a document detailing the particular files constituting Molon's trade secrets

16

that were copied, along with a description of the nature of those files and the specific Molon products to which those files relate, as presently understood.  (D.I.  65, *Appendix to Third Amended Complaint*.)  These files fall under the following categories of trade secret materials: (i) motor design and engineering drawings (*see id.* at ¶ 1); (ii) motor production inspection protocols (*see id.* at ¶ 2); (iii) motor production tools (*see id.* at ¶ 3); (iv) quality control test protocols (*see id.* at ¶ 4); (v) quality control test data and reports (*see id.* at ¶ 5);  and (vi) customer quality control communications (*see id.* at ¶ 6).

66.     Molon and Nidec Motor's predecessor, Merkle-Korff Industries, Inc. ("Merkle-Korff"), have been competitors in the electric motor business for decades.  They compete for custom motor designs, for example, for vending machines (i.e., the subject of the patent infringement counts), refrigerator ice makers, and breast pump motors.  They also compete for standard, off-the-shelf electric motors, including those sold through large distribution channels.

67.     Upon information and belief, Mr. Desai unlawfully disclosed Molon's trade secrets, that he had wrongfully copied from his Molon work computer.  Mr. Desai left Molon for employment in a similar position with Molon's competitor and Nidec Motor's predecessor, Merkle-Korff.  Under these circumstances, given Mr. Desai's prior employment with Molon and his wrongful copying of Molon's trade secrets (as detailed above in ¶ 65 and in the *Appendix to Third Amended Complaint* (D.I. 65)), Nidec Motor's use of the trade secrets can be inferred under the "inevitable disclosure doctrine."

68.     The Defend Trade Secrets Act ("DTSA"), Pub. L. No. 114-153, 130 Stat. 376, which was passed into law on May 11, 2016, specifically allows a private right of action for misappropriation of trade secrets.  Molon is an owner of trade secrets, as defined by DTSA which have been willfully misappropriated by Nidec Motor thought its agents.  A person misappropriates a trade secret by, among other things, disclosing the trade secret despite

17

knowing that it was acquired under circumstances giving rise to a duty to maintain its secrecy or limits its use or from a person who had a duty to maintain its secrecy or use.

69.     Molon took affirmative measures to keep its confidential and proprietary information secret.  Mr. Desai received an offer of employment from Merkle–Korff, Nidec Motor's predecessor, which he accepted.  Mr. Desai signed an employment agreement with Molon that included restrictive covenants concerning trade secrets and confidential information. Mr. Desai's computer at Molon showed activity in which proprietary trade secret data and files were accessed and copied to a portable data drive.  The portable data drive was neither owned by, nor known to, Molon.

70.     Molon has no adequate remedy at law to protect against the illegal misappropriation and use of its trade secrets by Nidec Motor.  Injunctive relief is, therefore, necessary and appropriate to restrain the illegal misappropriation and use of such trade secrets and confidential information pursuant to the DTSA.

71.     Unless Nidec Motor is restrained and enjoined from using Molon's trade secrets and confidential information, Molon will suffer immediate and irreparable injury in that Nidec Motor will continue to have access and the ability to make use of the trade secrets and confidential information.

72.      As a direct and proximate result of Nidec Motor's actual and threatened misappropriation of Molon's trade secrets and confidential information, Molon has suffered damages in an amount yet to be determined. Nidec Motor has been unjustly enriched.  Pursuant to the DTSA, Molon is entitled to recover damages.  By reason of Nidec Motor's willful and malicious acts, Molon is entitled to an award of exemplary damages from Nidec Motor in such amounts as is necessary to punish Nidec Motor and deter them from commission of like acts and, in addition, reasonable attorneys' fees pursuant to the DTSA.

18

## COUNT IV

## Nidec Motor's Violation Of The Illinois Trade Secrets Act

73.     Plaintiff repeats and re-alleges each and every allegation of paragraphs 55-67 as though fully set forth herein.

74.     The Illinois Trade Secrets Act ("ITSA") defines a "trade secret" as information "including, but not limited to technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers" that is (a) sufficient secret to derive economic value . . . from not being generally known to other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.  765 ILCS 1065/2(d).

75.     A person misappropriates a trade secret by, among other things, disclosing the trade secret despite knowing that it was "acquired under circumstances giving rise to a duty to maintain its secrecy or limits its use" or from a person who had a duty to maintain its secrecy or use.  765 ILCS 1065/2(b)(2)(B)(II) and (III).

76.      The ITSA authorizes injunctive and other relief to remedy "actual or threatened misappropriation" of trade secrets.  765 ILCS 1065/3(a).  Illinois law permits injunctive relief upon a showing that a person's new employment will inevitably lead him or her to rely on the trade secrets.

77.     Molon took affirmative measures to keep its confidential and proprietary information secret.  Mr. Desai received an offer of employment from Merkle-Korff, Nidec's predecessor, which he accepted.  Mr. Desai signed an employment agreements with Molon that included restrictive covenants concerning trade secrets and confidential information.  Mr. Desai's computer at Molon showed activity in which the proprietary data was accessed and

copied to a portable data drive. The portable data drive was neither owned by, nor known to, Molon.

78.     Molon has no adequate remedy at law to protect against the illegal misappropriation and use of its trade secrets and confidential information by Nidec Motor. Injunctive relief is, therefore, necessary and appropriate to restrain the illegal misappropriation and use of such trade secrets and confidential information pursuant to Section 3 of the ITSA. *See* 765 ILCS 1065/3.

79.     Unless Nidec Motor is restrained and enjoined from using Molon's trade secrets and confidential information, Molon will suffer immediate and irreparable injury in that Nidec Motor will continue to have access and the ability to make use of Molon's trade secrets and confidential information.

80.     As a direct and proximate result of Nidec Motor's actual and threatened misappropriation of Molon's trade secrets and confidential information, Molon has suffered damages in an amount yet to be determined and Nidec Motor has been unjustly enriched by Messrs. Desai and Gomez offering a benefit to their new employer to which they are not entitled. Therefore, pursuant to Section 4 of the ITSA, Molon is entitled to recover damages. *See* 765 ILCS 1065/4.

81.     By reason of Nidec Motor's willful and malicious acts, Molon is entitled to an award of exemplary damages from Nidec Motor in such amounts as is necessary to punish Nidec Motor and deter them from commission of like acts and, in addition, reasonable attorney's fees pursuant to Section 5 of the ITSA. *See* 765 ILCS 1065/5.

## JURY DEMAND

82.     Molon hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

Molon respectfully requests that the Court find in its favor and against Nidec Motor, and that the Court grants Molon the following relief:

A.     Holding that Nidec Motor has directly infringed, either literally or under the doctrine of equivalents, at least one claim of the '915 Patent under 35 U.S.C. § 271(a);

B.     Holding that Nidec Motor has induced infringement of at least one claim of the '915 Patent under 35 U.S.C. § 271(b);

C.     Holding that Nidec Motor has contributed to the infringement of at least one claim of the '915 Patent under 35 U.S.C. § 271(c);

D.     Holding that Nidec Motor has infringed at least one claim of the '915 Patent under 35 U.S.C. § 271(f)(1);

E.     Holding that Nidec Motor has infringed at least one claim of the '915 Patent under 35 U.S.C. § 271(f)(1);

F.     Holding that Nidec Motor has willfully infringed at least one claim of the '915 Patent.

G.     Holding that the '915 Patent is valid and enforceable;

H.     Permanently enjoining Nidec Motor and its officers, directors, agents, servants, employees, affiliates, divisions, branches, subsidiaries, parents and all others acting in concert or privity with any of them from infringing, inducing the infringement of or contributing to the infringement of the '915 Patent;

I. Awarding to Molon the damages to which it is entitled under 35 U.S.C. § 284 for Nidec Motor's past infringement and any continuing or future infringement of the '915 Patent up until the date Nidec Motor is finally and permanently enjoined from further infringement, including compensatory damages and the trebling of such damages due to the willful nature of the infringement;

J. Holding that Nidec Motor has directly infringed the '072 Patent under 35 U.S.C. § 271(a);

K. Holding that the '072 Patent is valid and enforceable;

L. Permanently enjoining Nidec Motor and its officers, directors, agents, servants, employees, affiliates, divisions, branches, subsidiaries, parents and all others acting in concert or privity with any of them from infringing, inducing the infringement of or contributing to the infringement of the '072 Patent;

M. Awarding to Molon the damages to which it is entitled under 35 U.S.C. §§ 284 and/or 289 for Nidec Motor's past infringement and any continuing or future infringement of the '072 Patent up until the date Nidec Motor is finally and permanently enjoined from further infringement, including compensatory damages;

N. Declaring this to be an exceptional case and awarding Molon attorneys' fees under 35 U.S.C. § 285;

O. Permanently enjoining Nidec Motor and its officers, directors, agents, servants, employees, affiliates, divisions, branches, subsidiaries, parents and all others acting in concert or privity with any of them from using Molon's trade secrets;

P. Awarding to Molon the damages to which it is entitled for Nidec Motor's misappropriation of Molon's trade secrets up until the date Nidec Motor is

finally and permanently enjoined from further infringement, including compensatory damages, under both the Illinois Trade Secrets Act and the Defend Trade Secrets Act;

Q.    Awarding to Molon the attorneys' fees to which it is entitled for Nidec Motor's misappropriation of Molon's trade secrets;

R.    Awarding Molon costs and expenses in this action;

S.    Awarding Molon pre- and post-judgment interest on its damages; and

T.    Such other and further relief as the Court deems just and equitable.

Dated: September 23, 2016        Mishcon de Reya New York LLP

By: _/s/ John F. Petrsoric_
John F. Petrsoric (#3995313)
Robert A. Whitman
Mark S. Raskin
2 Park Avenue South, 20th Floor
New York, New York 10016
Telephone: (212) 612-3270
Fax: (212) 612-3297
john.petrsoric@mishcon.com
robert.whitman@mishcon.com
mark.raskin@mishcon.com

*Attorneys for Plaintiff Molon Motor and Coil Corp.*

Local Counsel:
Sara E. Cook
Kristin Tauras
McKenna Storer
33 N. LaSalle St., Suite 1400
Chicago, IL 60602
312-558-3900
scook@mckenna-law.com
ktauras@mckenna-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2016, the foregoing document, *Third Amended Complaint*, was filed electronically via the Court's Electronic Case Filing System (ECF). Notice of the filing is being served upon all counsel of record automatically through Notice of Electronic Filing.

*/s/ John F. Petrsoric*
John F. Petrsoric
